UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWNA BIGLER

                        Plaintiff,              10-CV-6325T

             v.                                 **DECISION
                                                and ORDER**

MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____

### <u>INTRODUCTION</u>

     Plaintiff, Shawna Bigler ("Plaintiff"), brings this action
pursuant to Title XVI of the Social Security Act, seeking review of
the final decision of the Commissioner of Social Security
("Commissioner"), denying her application for Supplemental Security
Income("SSI").   Specifically, the Plaintiff alleges that the
decision of the Administrative Law Judge, James E. Dombeck ("ALJ"),
denying Plaintiff's application for benefits, was not supported by
substantial evidence in the record and was contrary to the
applicable legal standards.

     The Commissioner moves for judgment on the pleadings pursuant
to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that the
decision of the ALJ was supported by substantial evidence in the
record.   The Plaintiff opposes the Commissioner's motion, and
cross-moves for judgement on the pleadings on the grounds that the
ALJ's decision was not supported by substantial evidence.   This
court finds that the ALJ's decision was supported by substantial
evidence in the record, and was in accordance with the applicable

legal standards.  Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.  Plaintiff's complaint is dismissed with prejudice.

### BACKGROUND

Plaintiff, a former housekeeper, fast food worker, and teacher's aide, filed an application for Supplemental Security Income under Title XVI of the Social Security Act, claiming disability due to myoclonic seizures and anxiety.  Transcript of the Administrative Proceedings at 66-67, 253 (hereinafter "Tr."). Plaintiff's application was initially denied on July 27, 2006. Tr. at 184-87.  Plaintiff filed a timely written request for a hearing, which was held on December 4, 2008 before ALJ James E. Dombeck. Tr. at 18-61, 180-81. Plaintiff appeared at the hearing, with counsel, and testified. Id.

In a decision dated January 22, 2009, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. Tr. at 154-166.  The Appeals Council then remanded the proceedings to ALJ James E. Dombeck to clarify the Plaintiff's occupational limitations through the testimony of an impartial vocational expert.  Tr. at 199-200.  In a decision dated September 17, 2009, the ALJ affirmed his prior decision and found that the testimony of the vocational expert confirmed that the Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. at 129-139.  Plaintiff sought further review by the Appeals Council on

November 18, 2009.  Tr. at 12-17.  The ALJ's decision became the final decision of the Commissioner on April 23, 2010, when the Appeals Council denied further review.  Tr. at 8-10.  Plaintiff then filed this action on June 18, 2010.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim.  See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case de novo).  The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12 (c).   Under Rule 12 (c), Judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988).  If, after reviewing the record, the Court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  After reviewing the entire record, this Court finds that the Commissioner's decision is supported by substantial evidence in the record, and is in accordance with the applicable legal standards.  Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## II.  <u>The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.</u>

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. at 138, 166.  In his decision, the ALJ adhered to the required 5-step sequential analysis for evaluating Social Security disability benefits cases. Tr. at 129-139, 154-166.  The 5-step analysis requires the ALJ to consider the following:

(1)   Whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3)   if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4)   if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5)   if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v).

In this case, the ALJ found that: (1) the Plaintiff has not engaged in substantial gainful activity since February 22, 2006; (2) the Plaintiff has the severe impairments: borderline intellectual functioning, seizure disorder, anxiety disorder, depressive disorder, personality disorder, and a history of excessive/exaggerated startled responses; (3) the Plaintiff's impairments do not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff can perform her past relevant work as a housekeeper; and (5) the Plaintiff has the residual functional capacity to perform light work involving simple one to two step tasks in a low stress environment with no exposure to hazards, heights or moving machinery. Tr. at 137-38. Therefore, the ALJ concluded that the

Plaintiff was not disabled within the meaning of the Social Security Act. Tr. at 138. This Court holds that the ALJ's decision was supported by substantial evidence in the record.

Plaintiff's medical record begins on March 9, 2005, when neurologist Dr. Louis Medved saw Plaintiff for follow-up treatment regarding a seizure disorder. Tr. at 367. Plaintiff was taking Depakote and Topamax, and had been seizure free since June 2004. Tr. at 361, 367. On May 12, 2005, Dr. Medved noted Plaintiff's seizure condition was clinically stable, but noted her complaints of exaggerated startle responses (hyperexplexia). Tr. at 400-01. Dr. Medved began treatment for hyperexplexia, a non-epileptic disorder, by prescribing Klonopin. Id.

In early October 2005, psychologist Dr. Denise L. Henderson saw Plaintiff for a cognitive function and employment assessment. Tr. at 384. Plaintiff was assessed with an IQ of 76, borderline impaired range. Tr. at 388. Dr. Henderson reported that Plaintiff "would do best in a relatively structured, concrete position in which duties are consistent and clearly defined." Tr. at 390.

On January 12, 2006, Plaintiff sought and received an examination at Strong Memorial Hospital by Dr. A. James Fessler. Tr. at 347. Dr. Fessler suggested diagnostic testing. Tr. at 349. Diagnostic testing included video electroencephalography (EEG) monitoring, which indicated epilepsy, and a Magnetic Resonance Imaging (MRI) scan of her head, which was normal. Tr. at 334-35, 414. Plaintiff was diagnosed with a partial seizure

disorder, but her startles were found to be non-epileptic.  Tr. at
333.  Dr. Fessler changed Plaintiff's prescription from clonazepam,
generic Klonopin, to Keppra for these non-epileptic startles.  Id.
Plaintiff went to a follow-up visit with Dr. Fessler on March 20,
2006, who noted Plaintiff's feelings of "unsteadiness" in her
balance might be caused by increasing startles or medication side
effects and encouraged Plaintiff to continue with the therapy.
Tr. at 418-19.

On April 25, 2006, Plaintiff met with neurologist Dr. Toor
Harbinder, a consultive examiner.  Tr. at 453.  Dr. Toor confirmed
Plaintiff's last seizure was in 2004 and noted that her daily
activities include showering, cleaning, cooking, shopping, reading,
and gardening on her own.  Tr. at 454.  Dr. Toor recommended
Plaintiff avoid heights and operating machinery due to her history
of seizure disorder.  Tr. at 455.

Plaintiff also met with John Thomassen, Ph.D. for a consultive
psychiatric evaluation on April 25, 2006.  Tr. at 457.  During the
evaluation, Plaintiff stated she was not working because she could
not find a job.  Id.  Plaintiff reported taking Zoloft for the past
three years for anxiety.  Id.  Dr. Thomassen found that
"allegations of psychiatric disability were not fully consistent
with examination findings" and he diagnosed general anxiety.
Tr. at 459.  Further, Dr. Thomassen stated that the Plaintiff
"should be able to perform rote tasks and follow simple
directions."  Id.  Dr. Thomassen's diagnosis is supported by the

results of a mental health examination on June 21, 2006 conducted at Unity Health System.  Tr. at 465-472.  Here, Plaintiff was assessed by Jean Parker, the primary therapist, who stated that Plaintiff's motor activity was within normal limits and her mood was "a little anxious." Tr. at 469.

On July 13, 2006, Plaintiff was examined by Dr. Fessler, who reported Plaintiff had no myoclonic jerks or excessive startle responses, but had a mild tremor in her hands. Tr. at 529-530. Dr. Fessler referred the Plaintiff to the Movement Disorder Center "for  further evaluation of her hyperexplexia and to discuss medical treatment options."  Tr. at 530.

State Agency doctor, M. Cheryl Butensky, Ph.D., completed a residual functional capacity assessment on July 26, 2006.  Tr. at 476-493.  Ultimately, Dr. Butensky concluded that the Plaintiff "retains the capacity to perform simple rote tasks in a low-contact, low-stress environment."  Tr. at 492.

On September 7, 2006, Dr. Earl Ray Dorsey of the Movement Disorder Clinic examined Plaintiff.  Tr. at 574-75.  Dr. Dorsey found that Plaintiff likely had epilepsy.  Tr. at 575.  However, Dr. Dorsey found "no clear evidence for a primary movement disorder," such as hyperexplexia, which are rare disorders often associated with heredity or ethnic predisposition.  Id.  Finally, Dr. Dorsey  did not recommend additional treatment, but suggested possible use of a benzodiazepine to reduce her startle responses. Id.

On January 11, 2007, Dr. Fessler examined the Plaintiff and again found no evidence of a movement disorder.  Tr. at 524-26. Plaintiff's medication was switched from Keppra, which was causing fatigue, to Lamictal. Tr. at 525.  Dr. Fessler found normal bulk tone and full strength in Plaintiff's arms and legs, but noticed a mild tremor on Plaintiff's finger-to-nose testing.  Id.  In a follow-up exam on April 19, 2007, Plaintiff again showed a mild upper extremity postural tremor, but her finger-to-nose touch was intact.  Tr. at 520.

On May 23, 2007, Dr. Kamini Jagdish examined Plaintiff for issues relating to pre-menstrual syndrome (PMS).  Tr. at 556-58. During this exam, Plaintiff reported no recent seizures and "no more tremors."  Tr. at 557.

An EEG conducted on June 18, 2007 showed no clear epileptiform abnormalities.  Tr. at 553-54.  Upon reviewing these EEG results, Dr. Fessler stated that the nature of these startles was unclear and that they were non-epileptic. Tr. at 518-19.  In a follow-up examination on February 14, 2008, Plaintiff informed Dr. Fessler that her startle response was "under much better control."  Tr. at 514.

Dr. Kamini Jagdish evaluated Plaintiff on April 2, 2008 for VESID.  Tr. at 508-09.  Dr. Jagdish found no physical limitations, but noted that plaintiff should avoid working conditions with "heights, loud noise, [and] light sensitivity."  Tr. at 509.

Dr. Jagdish reported that Plaintiff was anxious, but stable on Zoloft.  Tr. at 560.

On June 16, 2008, FNP Mary Wadsworth examined Plaintiff, finding "frequent jerking motions of the right arm and leg in response to light touch or loud noises."  Tr. at 600.  On July 15, 2008, Plaintiff had a follow-up visit with FNP Wadsworth where it was noted that Plaintiff's anxiety was stable.  Tr. at 498.  Thus, Plaintiff's prescription for Zoloft was decreased.  Id.

Dr. Fessler conducted a follow-up examination of Plaintiff on December 15, 2008 in which Plaintiff stated she continued to "do well," had suffered no recurrent seizures, and her last seizure was August 2006.  Tr. at 617.  In order to determine if Plaintiff was a candidate for driving because of her startle response, she was to undergo an occupational therapy evaluation.  Id.  Plaintiff had no myoclonic startles.  Id.

On November 25, 2008, FNP Wadsworth and Dr. Fleig completed a residual functional capacity questionnaire related to seizures. They reported that they examined Plaintiff on four occasions within the last six months and Plaintiff suffered from mixed types of localized seizures at a frequency of two to three times per week. Tr. at 612-15.  Further, they reported that these seizures would not disrupt co-workers, but that Plaintiff would require more supervision at work than an unimpaired worker.  Tr. at 613-14. They opined that Plaintiff could not work with power machines, at heights, or operate a motor vehicle, however the Plaintiff could

take public transportation.  Tr. at 614.  The report conclude that Plaintiff is incapable of even low-stress jobs because of "previous evaluations reporting difficulty in various work settings and confirmed by the patient," and would require an hour rest period each afternoon.  Id.

Dr. Fleig completed another residual functional capacity questionnaire relating to seizures on June 30, 2009.  Tr. at 693-96.  On this occasion, Dr. Fleig opined that Plaintiff was capable of low stress jobs, but should not work at heights, with power machines, or operate heavy machinery.  Tr. at 695.  Further, Dr. Fleig noted that Plaintiff would require a one hour break in the afternoon "due to fatigue."  Id.  Finally, Dr. Fleig noted that Plaintiff would "function best in [a] low stress/slow paced atmosphere."  Tr. at 696.

On February 19, 2009, Dr. Fessler examined Plaintiff, noting her last seizure occurred in August 2006, she denied side-effects from her medications, and her myoclonus was "better lately." Tr. at 672-73.  Plaintiff had no myoclonic startles during the examination. Tr. at 672.

Dr. Fessler completed a residual functional capacity questionnaire on December 15, 2008. He stated that he examined Plaintiff two to four times per year since 2006.  Tr. at 619-622. He reported that Plaintiff was diagnosed with a partial seizure disorder and startle induced myoclonus, with her last two seizures occurring in June 2004 and August 2006.  Tr. at 619.  Thus, he

opined that her history of seizures would not prevent Plaintiff
from driving.  Id.  Further, Plaintiff could ride a bus.  Id.
Dr. Fessler noted that if a seizure occurs, it might disrupt co-
workers.  Tr. at 621.  Ultimately, Dr. Fessler found that Plaintiff
is capable of low stress jobs and would not need to take
unscheduled breaks during the workday.  Tr. at 622.  He found that
Plaintiff did not have restrictions because of her history of
seizures; however, if seizures reoccur, Plaintiff should not work
at heights, or operate machinery.  Id.  Finally, because of
Plaintiff's complaints of myoclonus, she should not perform
sensitive, fine motor tasks.  Id.  Dr. Fessler prepared a second
residual functional capacity questionnaire on July 21, 2009; his
responses were unchanged.  Tr. at 668-671.

On February 24, 2009, Plaintiff was evaluated for her
Somatosensory Evoked Potential (SSEP), which was found to be in the
normal range for both her upper and lower extremities.  Tr. at 674-
75.

Plaintiff's VESID counselor wrote a note on April 23, 2009
stating that Ms. Lanna Wolcott, a vocational specialist working
with Plaintiff, had favorable feelings about Plaintiff after
Plaintiff had taken the bus, had a willingness to learn new routes,
wanted to expand her geographic area, and was "very eager and
motivated."  Tr. at 654.  In Plaintiff's May 2009 monthly progress
report from the ARC of Monroe, Plaintiff's VESID counselor noted
that Plaintiff stated  that "even if offered a position, she would

not accept because she'd like to 'see what opportunities are out there' before accepting a position." Tr. at 660.

FNP Wadsworth examined Plaintiff on June 15, 2009 and found that Plaintiff's anxiety was "well controlled" and she was currently tapering off of Zoloft. Tr at 687. Plaintiff's follow-up visit with Dr. Fleig on June 30, 2009 showed that Plaintiff had not experienced a grand mal seizure in many years, experienced "startle" seizures nearly daily that do not cause "post ictal state," and was to continue with her current regimen. Tr. at 686.

On August 17, 2009, Lanna E. Wolcott, Plaintiff's vocational specialist, wrote a letter to Plaintiff's attorney stating that Plaintiff would need one-on-one job support services in order to maintain employment. Tr. at 698. Ms. Wolcott further suggested that Plaintiff is only suitable for part-time work because of her anxiety. Id.

The ALJ found that Plaintiff may be able to perform past relevant work, and can perform other light work. The ALJ held that Plaintiff is capable of performing light work, "except that she is restricted to work involving simple one to two step tasks in a low stress environment, with no exposure [sic] to hazards, heights, or moving machinery." Tr. at 160. In making this finding, the ALJ gave great weight to treating physician Dr. Fessler's residual functional capacity assessments as well as Dr. Fleig's second residual functional capacity assessment. Tr. at 160, 622, 695. The ALJ noted that the Plaintiff has only had two documented

seizures, with the first in June 2004 and the second in August 2006.  Tr. at 159.  Further, the ALJ found that the seizure disorder was clinically stable in accordance with treating physician Dr. Fessler's opinion, as the Plaintiff has been seizure-free since August 2006.  This court finds that there is substantial evidence in the record to support the ALJ's decision.

A.   The ALJ gave proper weight to Dr. Henderson's evaluation.

      Plaintiff claims that the ALJ did not consider the evaluation by Dr. Henderson in his decision. Pl. Mem. of Law at 17.  Further, Plaintiff argues that the ALJ selectively rejected the opinion of psychologist Dr. Henderson, whom Plaintiff claims is a treating physician.  Id.

      In his first opinion dated January 22, 2009, the ALJ discussed the findings of Dr. Henderson's evaluation.  Tr. at 161-62.  Here, the ALJ noted that although the Plaintiff scored at low levels on the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III), "Dr. Henderson found her overall fund of knowledge was in the average range."  Tr. at 162. Further, Dr. Henderson noted that Plaintiff has earned a four year degree from Rochester Institute of Technology, has completed a correspondence course on conservation, and was currently taking a correspondence course in animal science. Tr. at 162.  Lastly, the ALJ found that the Plaintiff's assertions that "she does not work fast enough" and that "it takes extra time [for her] to learn things," were unsupported by her discussion with Dr. Henderson in which she did not indicate any learning

difficulties with her past work as a cashier and her reasons for leaving this job "were not performance related".  Id.

The ALJ incorporated his findings regarding the Plaintiff's medical condition from his first decision into his second decision. Tr. at 135.  The ALJ noted that this case was remanded "specifically for vocational issues" and his findings regarding the Plaintiff's medical condition remained unchanged.  Id.

Plaintiff also claims the ALJ should have afforded greater weight to Dr. Henderson's opinion because Dr. Henderson is a treating physician.  The treating physician's rule states that "a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder."  Schisler v. Heckler, 787 F.2d 76, 81 (2d Cir. 1986).  "Where the treating physician's opinion is not given controlling weight, the ALJ must determine how much weight to give the opinion by considering the following six factors: the length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the physician presents to support his or her opinion;

the consistency of the opinion with the record; the physician's area of specialization; and any other factors the claimant brings to the ALJ." Carlantone v. Astrue, 2009 WL 2043888 (S.D.N.Y. 2009). However, the treating physician rule only applies to treating physicians.

Here, Plaintiff was referred to Dr. Henderson specifically to determine her level of cognitive functioning and if professional employment was a reasonable goal. Tr. at 384. Dr. Henderson only evaluated the Plaintiff once under this specific referral, and therefore this Court does not find that the ALJ erred in weighing Dr. Henderson's opinion.

Moreover, the Plaintiff mischaracterizes Dr. Henderson's evaluation as stating that the Plaintiff is incapable of work. Dr. Henderson has not made such a claim. Tr. at 384-391. In his evaluation, Dr. Henderson opined that Plaintiff "would do best in a relatively structured, concrete position in which duties are consistent and clearly defined." Tr. at 390. Under this limitation, the ALJ found that the Plaintiff is capable of performing past relevant work as a cleaner/housekeeper. Tr. at 138.

Ultimately, the ALJ considered the medical evidence provided by Dr. Henderson, who is not a treating physician, and weighed this opinion accordingly in his final decision. This Court finds that the ALJ gave appropriate weight to the opinion of Dr. Henderson in his determination that the Plaintiff is not disabled under the Act.

B.   <u>The ALJ gave proper weight to Ms. Lanna Wolcott's opinion.</u>

The Plaintiff claims that the ALJ did not give proper weight to the opinion of Ms. Lanna E. Wolcott, Plaintiff's vocational specialist from VESID.  Pl. Mem. of Law at 18-19.  Essentially, the Plaintiff argues that the ALJ did not consider an opinion proffered by Ms. Wolcott in a letter to the Plaintiff's attorney.  <u>Id.</u>  In this letter, Ms. Wolcott suggested that Plaintiff is best suited for part-time employment and would require additional assistance during the training phases of new employment. Tr. at 698.

Contrary to Plaintiff's contentions, the ALJ's discussion of Ms. Wolcott's opinion clearly demonstrates that he considered her opinion in his final decision dated September 17, 2009. Tr. at 136. The ALJ stated that Ms. Wolcott's "impressions and recommendations were only based on claimant's self-reported limitations at the intake interview."  <u>Id.</u>  Further, the ALJ stated that "in the absence of medical confirmation, [these opinions] do not impose the functional limitations of such disabling proportions as reported." <u>Id.</u>

This Court finds that the ALJ gave the appropriate weight to Ms. Wolcott's opinion.  Under SSR 06-03p, the ALJ must consider all relevant opinions presented before him, however he must give greater weight to "acceptable medical sources."  Because Ms. Wolcott is an "employment specialist," she does not qualify as an "acceptable medical source." <u>Id.</u> Further, opinions based on incomplete evidence, or lacking the specific nature of the

claimant's limitations without support of medical evidence can be discounted by the ALJ.  Sherrill v. Sec'y of Health and Human Services, 757 F.2d 803, 804-05 (6th Cir. 1985).  Thus, the opinions of Ms. Wolcott can be discounted further by the ALJ because she did not provide any medical support for her opinions.  Tr. at 698. Ultimately, the ALJ found that, contrary to Ms. Wolcott's unsupported contentions, the most current residual functional capacity assessments, which declared Plaintiff capable of low stress jobs, are "supported by the medical record as a whole as well as the claimant's activities of daily living."  Tr. at 164. This Court finds that the ALJ gave appropriate weight to Ms. Wolcott's opinion in his analysis.

Additionally, Plaintiff argues that the decision of the ALJ in the present case is akin to the decision by the ALJ in Canales v. Comm'r of Soc. Sec. and in Carlantone v. Astrue. 698 F.Supp.2d 335 (E.D.N.Y. 2010); 2009 WL 2043888 (S.D.N.Y. 2009).  In Canales v. Comm'r of Soc. Sec., the  court remanded the case because the ALJ did not address the weight, if any, that was given to the opinion of the social worker regarding the Plaintiff's condition. 698 F.Supp.2d 335 (E.D.N.Y. 2010).  Further, the court in Carlantone v. Astrue found error when the ALJ did not weigh the opinions of two chiropractors in his decision.  2009 WL 2043888 (S.D.N.Y. 2009).

Unlike the ALJ in Canales v. Comm'r of Soc. Sec. and in Carlantone v. Astrue, ALJ Dombeck considered and discussed the opinion of Ms. Wolcott, but merely afforded greater weight to the

opinions of the acceptable medical sources which are supported by substantial medical evidence, including the results of diagnostic testing.   698 F.Supp.2d 335 (E.D.N.Y. 2010); 2009 WL 2043888 (S.D.N.Y. 2009); Tr. at 132-39, 157-166.   Therefore, this Court finds that the ALJ properly gave greater weight to acceptable medical sources including Plaintiff's treating physicians, while still considering Ms. Wolcott's recommendations in forming his opinion that Plaintiff is not disabled under the Act.

C.   The ALJ gave proper weight to Mr. Peter Manzi's opinion.

The ALJ considered the testimony of the vocational expert, Mr. Peter Manzi, which revealed that a hypothetical person suffering from similar conditions as the Plaintiff would be able to complete light work with a Specific Vocational Preparation (SVP) of two, which includes the Plaintiff's past occupation of housekeeper. Tr. at 105.   Plaintiff, however, argues that the ALJ did not include all severe impairments in his hypothetical questions to the vocational expert.  Pl. Mem. of Law at 21-22.

Hypothetical questions must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and significant.  Varley v. Sec'y of Health & Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  In the present case, the questioning of Mr. Manzi was restricted to discussing a person experiencing the same conditions as the Plaintiff.  Tr. at 102-05. Mr. Manzi was present for the questioning of the Plaintiff regarding her conditions and he read the exhibit file pertaining to

the Plaintiff's vocational matters prior to testifying.  Tr. at
102.  Ultimately, Mr. Manzi testified that a hypothetical person,
suffering from all conditions claimed by the Plaintiff including
borderline cognitive functioning, would be able to work in her
previous position as a housekeeper.  Tr. at 107, 109-110.  The ALJ
considered Mr. Manzi's opinion in his decision.   Tr. at 138.
Ultimately, because this Court finds that the hypothetical person
discussed throughout Mr. Manzi's testimony suffered from the same
conditions that the Plaintiff claims, Mr. Manzi's discussion of the
hypothetical person's ability to work in certain positions,
including that of housekeeper, was properly considered by the ALJ
in his determination that the Plaintiff is not disabled under the
Act.

D.    The ALJ gave proper weight to FNP Wadsworth's assessment of
      the Plaintiff.

     The ALJ did not give FNP Wadsworth's opinion controlling
weight in his opinion that the Plaintiff is not disabled under the
Act.  Under SSR 06-03p, the ALJ must consider all relevant opinions
presented before him, however he must give greater weight to
"acceptable medical sources."   Nurse practitioners are "medical
sources who are not 'acceptable medical sources.'" SSR 06-03P.
Thus, the opinions of nurse practitioners are not given the same
weight as the opinions of "acceptable medical sources," such as
licensed physicians and licensed or certified psychologists.  Id.
Moreover, opinions based on incomplete evidence, or lacking the

specific nature of the claimant's limitations without support of medical evidence can be discounted by the ALJ.  <u>Sherrill v. Sec'y of Health and Human Services</u>, 757 F.2d 803, 804-05 (6th Cir. 1985).

Here, FNP Wadsworth did not cite any medical evidence supporting her opinion that Plaintiff is incapable of even low stress jobs.  Tr. at 614.  Moreover, the ALJ found that her opinion is inconsistent with the medical evidence in the record as a whole, especially that of treating physician Dr. Fessler, and that FNP Wadsworth did not cite any medical evidence supporting her conclusion.  Tr. at 163-64, 612-15.  Furthermore, the ALJ found that FNP Wadsworth did not provide any evidence of actual treatment for the diagnoses on which she based her opinion.  <u>Id.</u>  Thus, the ALJ can discount these opinions.

Ultimately, the ALJ gave "greater weight" to the opinions of the Plaintiff's treating physicians, Dr. Kamini Jagdish and Dr. James Fessler.  Tr. at 162-64.  Dr. Jagdish and Dr. Fessler opined that the Plaintiff is capable of light work, which is supported by their examinations and diagnoses of Plaintiff including their analysis of the results of Plaintiff's diagnostic testing.  Tr. at 334-35, 414, 508-09, 622, 668-671. Further, both of these licensed physicians treated Plaintiff for a significantly longer period of time than FNP Wadsworth.  Tr. at 162-64.  Thus, this Court finds the ALJ properly weighed the opinion of FNP Wadsworth in concluding that there was substantial medical evidence in the record that Plaintiff is not disabled under the Act.

In sum, this court finds that the ALJ's decision that the Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record, including the medical evidence provided by her treating physicians, Dr. Fessler and Dr. Jagdish, as well as the consultive physicians. Accordingly, Plaintiff's motion for judgment on the pleadings is denied, the Defendant's motion for judgment on the pleadings is granted, and the Plaintiff's complaint is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.   Therefore, I grant the Commissioner's motion for judgment on the pleadings.  The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                    United States District Judge

Dated:    Rochester, New York
          March 28, 2011